**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KRISTLE AUTREY, et al.** | * | |
| *Plaintiffs,* | * | |
| v. | * | **Case No.:  1:14-CV-03064 GLR** |
| | * | |
| **STATE OF MARYLAND, et al.,** | * | |
| *Defendants.* | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS COMPLAINT**

Defendants, the State of Maryland (the "State"), and the Maryland Department of Public Safety and Correctional Services (the "Department"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), have moved this Court to dismiss the Complaint for lack of subject-matter jurisdiction and/or for failure to state a claim upon which relief can be granted, and submit this memorandum of law in support thereof.

**SUMMARY OF THE CASE**

Plaintiffs, Kristle Autrey and Adrean Morris, have filed a four count Complaint against the State and the Department for alleged racial discrimination, harassment and retaliation in violation of 42 U.S.C. §2000e ("Title VII"), as well as  racial discrimination in the making and enforcement of an employment contract pursuant to 42 U.S.C. §1981.  At the time relevant to this case, Plaintiffs were both employed in the position of Correctional Officer II (Corporal) at the Brockbridge Correctional Facility, a correctional institution

operated by the Department.  (Compl. ¶ 1, 2.)   Plaintiffs allege that in September 2011, their co-workers and supervisors learned that they were involved in a relationship.  (Compl. ¶ 7.) Ms. Autrey is Caucasian, while Mr. Morris is African-American. (Compl. ¶ 7.)  Plaintiffs assert that beginning in September of 2011, "Ms. Autrey was subjected to severe harassment and discrimination because of her interracial relationship with Cpl. Morris."  (Compl. ¶ 8.) Plaintiffs allege that Ms. Autrey was "removed from her recently-assigned position as Sanitation Officer," a position that they describe as "one of the most sought-after positions in the facility."   (Compl. ¶ 10.)   Plaintiffs complain that supervisors began "rigorously enforcing every requirement of the policy manual against [only them], while other corporals were given wide latitude regarding their adherence to a variety of written policies."  (Compl. ¶ 14.)  Specifically, Plaintiffs complain that the Department policies prohibiting personal phone calls on work time, and "hanging out" or eating lunch with another officer who was on post, were enforced more strictly against them.  (Compl. ¶¶ 15-35.)

In addition, Plaintiffs claim that they were subjected to offensive comments about their relationship by three supervisors, Lieutenant Long, Captain Davis and Lieutenant Laster.   Plaintiffs claim that these statements were made because of the interracial nature of their relationship.   (Compl. ¶ 56.)   Finally, Plaintiffs claim that after they formally complained about the discriminatory treatment by supervisors, they were retaliated against. (Compl. ¶ 77-89.)   Specifically, Ms. Autrey was informed that her shift was being transferred three days after she filed an internal complaint of discrimination. (Compl. ¶ 78.) Plaintiffs acknowledge, however, that the transfer was never imposed and that it was rescinded by Management before it went into effect.  (Compl. ¶ 80.)  Officer Morris

complains that he received two written counseling memorandum, which he describes as retaliation for having filed a formal internal complaint of discrimination. (Compl. ¶ 77, 83. ) Plaintiffs acknowledge, however, that at least one of the written counseling memorandum was rescinded.  (Compl. ¶ 85.)

Plaintiff Morris continues to be employed by the Department in the capacity of Correctional Officer II, assigned to Brockbridge. (Compl. ¶ 2.)  In May of 2012, Plaintiff Autrey went out on Family Medical Leave Act leave "due to the physical, mental, and emotional stress and harm as a result of the months of harassment and discrimination she had endured." (Compl. ¶ 82.)  She did not return to work and claims that "she feared that if she returned to work she would again be subjected to severe harassment, discrimination and retaliation." (Compl. ¶ 88.)  She asserts that she was "terminated" from her employment "in or around September 2012." (Compl. ¶ 89.) [1]

In Count I of the Complaint, Plaintiffs allege that they were subjected to discrimination based upon race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  (Compl. ¶¶ 92-106.)  In Count II, Plaintiffs allege that they were

---

[1]  Because Plaintiff Autrey failed to return to work after her 12 weeks of FMLA expired, she was separated from employment pursuant to COMAR 17.04.04.03D.  That regulation provides that

> An employee who is absent from duty without notifying the supervisor of the reasons for the absence and of the employee's intention to return to duty is absent without leave. After 5 working days from the first day of absence, the appointing authority shall advise the employee by certified and regular mail sent to the employee's last address of record that the employee is considered to have resigned without notice.

COMAR  17.04.04.03D.

subjected to a hostile work environment based on their interracial relationship. (Compl. ¶ ¶ 107-117.)  Count III is a claim alleging racial discrimination in the making and enforcement of an employment contract pursuant to 42 U.S.C. §1981.  (Compl. ¶¶ 118-134.)  Count IV alleges a retaliation claim under Title VII, asserting that Plaintiff Autrey was retaliated against when she was notified that her shift was to be changed from the night shift to 2:00 to 10:00 p.m. shift transfer, which transfer never took place.  (Compl. ¶ 135- 160.)  Plaintiff Autrey also claims she was terminated in retaliation for her complaints, however, acknowledges that she went out on medical leave in May of 2012 and never returned to work.  (Compl. ¶¶ 82, 88.)  Plaintiff Morris alleges that he was retaliated against when he received two written counseling memorandum, at least one of which was rescinded.  (Compl. ¶¶ 144, 146.)

### Plaintiffs' Administrative Charges of Discrimination

Plaintiff Autrey filed a charge of discrimination with the Maryland Commission on Civil Rights ("MCCR") on June 25, 2013. See Exhibit A attached.[2]  Plaintiff Morris filed a charge of discrimination with the MCCR on June 25, 2012.  See Exhibit B attached.

### STANDARD OF REVIEW

---

[2] In ruling on a motion to dismiss, the court may rely not only upon the allegations of the complaint, but also on the contents of any documents to which the complaint refers that are integral to the allegations, *Philips v. Pitt County Mem'l Hosp.*, 572 F. 3d 176, 180 (4th Cir. 2009).  Plaintiffs allege in their Complaint that they "exhausted all required administrative remedies before filing this action."  (Compl. ¶ 91.)  Because the burden is on Plaintiffs to establish administrative exhaustion in order to bring a claim in court under Title VII, the administrative charges filed by them are documents which are integral to the allegations set forth in the Complaint.

A motion to dismiss under Rule 12(b)(6) for failure to state a claim should be granted when "it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (internal quotations omitted). This Court should accept "as true all of the well-pleaded allegations and [view] the complaint in the light most favorable to the non-moving party." *Lesueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012). This Court, however, may disregard conclusions of law or unwarranted deductions of fact because the purpose of a Rule 12(b)(6) motion is to determine the legal sufficiency of the complaint. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Federal Rule of Civil Procedure 8(a)(2) provides that "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading must allege something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

## **ARGUMENT**

I.   **THIS COURT LACKS JURISDICTION TO ENTERTAIN PLAINTIFF AUTREY'S CLAIM OF DISCRIMINATORY DISCHARGE BECAUSE SHE DID NOT FILE AN ADMINISTRATIVE CHARGE ASSERTING THAT CLAIM, AND THUS, DID NOT EXHAUST ADMINISTRATIVE REMEDIES.**

This Court lacks subject matter jurisdiction over Plaintiff Autrey's claim race discrimination in the form of discriminatory and/or constructive discharge.  A Title VII plaintiff must first "exhaust her administrative remedies" by bringing a charge with the Equal Employment Opportunity Commission ("EEOC") or its state counterpart, in Maryland the MCCR.  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Id.* (citing *Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)(internal quotations omitted). A failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim. *See Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 138-40 (4th Cir.1995).

Plaintiff Autrey did not file an administrative charge alleging that she was discharged because of her interracial relationship.   Autrey filed one administrative charge of discrimination with the MCCR on June 25, 2012.    In that charge, Autrey alleged that the "dates of discrimination" took place between July 15, 2011 and March 8, 2012.  See Exhibit A.  Thus, the *last* date of discrimination took place more than three months before she filed

her charge, and some six months before she claims she was "terminated."  ( Compl. ¶ 89.) Nothing in Autrey's administrative charge indicated to the agency that she was claiming discriminatory discharge.   Despite the opportunity to do so Autrey did not file an additional charge when she was "terminated", nor did she amend her administrative charge to include a claim of discriminatory discharge. *Simmons v. Marsh*, 917 F.2d 23 (4th Cir. 1990) citing *De Medina v. Reinhardt,* 444 F.Supp. 573, 578-79 (D.D.C.1978) (failure to amend claim during administrative process warranted dismissal for failure to exhaust).

Autrey cannot rely on her discrimination and hostile work environment claim as a basis for claiming exhaustion of her remedies as to the discriminatory discharge claim. While there are some circumstances where exhaustion of administrative remedies is satisfied if the claim in question is sufficiently related to properly exhausted claims, such a circumstance is not present in this case. *Spencer v. Ashcroft*, 147 F. App'x 373, 375 (4th Cir. 2005) [C]onstructive discharge is a discrete discriminatory act requiring administrative exhaustion." *Van Durr v. Geithner*, No. 8:12-CV-02137-AW, 2013 WL 4087136, at *4 (D. Md. Aug. 12, 2013) *citing Spencer v. Ashcroft*, 147 F. App'x 373, 375 (4th Cir.2005). Indeed, the Fourth Circuit has found that constructive discharge is an entirely separate act requiring administrative exhaustion. *Young v. Nat'l Ctr. For Health Serv. Research,* 828 F.2d 235, 237–38 (4th Cir.1987).   As such, Autrey's claim for discriminatory discharge is not "included in" the MCCR charge she filed and does not naturally arise from an investigation of those charges. *Chacko v. Patuxent Inst.*, 429 D. 3d 505, 508 (2005).  *See also*, *Knotts v. Univ. of N. Carolina at Charlotte*, No. 3:08-CV-478, 2011 WL 650493, at *5 (W.D.N.C. Feb. 10, 2011).  Accordingly, this Court has no jurisdiction over Plaintiff Autrey's claim of

constructive or discriminatory discharge because she failed to administratively exhaust that claim.

## II.    COUNT I SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM OF RACIAL DISCRIMINATION IN THE FORM OF DISPARATE TREATMENT.

Title VII provides that it is "an unlawful employment practice for an employer ... to discharge ... or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race." 42 U.S.C. § 2000e–2(a)(1).  To prevail on a claim of disparate treatment based on race discrimination, a plaintiff must establish that "(1) [he or she] is a member of a protected class; (2)[he or she] has satisfactory job performance; (3)[he or she] was subjected to an adverse employment action; and (4) similarly situated employees outside [the] class received more favorable treatment." *Coleman v. Md. Ct. of App.,* 626 F.3d 187, 190 (4th Cir.2010), *See also*, *Prince–Garrison v. Md. Dept. of Health and Mental Hygiene,* 317 Fed. App'x 351, 353 (4th Cir.2009).

Plaintiffs have failed to establish the second and third elements of a disparate treatment claim.[3]  Plaintiffs have not alleged facts supporting the conclusion that they were

---

[3]    The Second, Fifth, Sixth, and Eleventh Circuits have affirmatively recognized claims based on a non-minority's relationship with a minority. *See Holcomb v. Iona College,* 521 F.3d 130, 139 (2d Cir.2008); *Deffenbaugh–Williams v. Wal–Mart Stores, Inc.,* 156 F.3d 581, 589 (5th Cir.1998); *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick & GMC Trucks, Inc.,* 173 F.3d 988, 994–95 (6th Cir.1999); *Parr v. Woodmen of the World Life Ins. Co.,* 791 F.2d 888, 892 (11th Cir.1986). The Fourth Circuit, in an unreported decision, appears to have recognized such claims. *Collin v. Rectors and Visitors of University of Virginia*, No. 96–1078, 1998 WL 637420 at *2 (4th Cir. Aug. 31, 1998).  For purposes of this motion, however, the Court need not decide whether interracial relationship claims are cognizable

performing their jobs to the satisfaction of their employer. To the contrary, Plaintiffs acknowledge routinely being warned about violation of the Department's policy prohibiting personal telephone calls while on shift. (Compl. ¶¶ 18-24.) In fact, Plaintiffs primary complaint appears to be that they were not permitted to engage in a violation of the policy and talk to each other on the phone while on shift, while others, they claim, were permitted to do so. (Compl. ¶¶ 18-24.) Plaintiffs also complain that they were not permitted to "hang out" with each other on shift. (Compl. ¶¶ 31-33.) On its face, this complaint negates a finding that Plaintiffs were engaged in adequate work performance. In a correctional facility, it would seem obvious that an officer should not engage in personal calls or entertain visitors while on post. Rather than alleging facts to support a finding that they were performing their jobs in a satisfactory manner, Plaintiffs' allegations focus on the misconduct of others. That is not sufficient to establish the first element of a disparate treatment claim, that *they* were performing their jobs in a satisfactory manner. Finally, Plaintiff Autrey cannot establish satisfactory job performance because she went out on FMLA leave in May of 2012, and admits that she did not return before she was allegedly "terminated" some five months later. (Compl. ¶¶ 82, 88.) She cannot establish adequate job performance because she did not perform her job at all from May 2012 onward. These allegations simply do not support a finding of satisfactory job performance, the first requisite element of a disparate treatment discrimination claim.

---

under Title VII, because even if such claims can properly be brought, Plaintiffs have failed to state a claim upon which relief can be granted.

In addition, Plaintiffs have failed to allege they suffered an adverse employment action. To prevail on a Title VII claim, "the existence of some adverse employment action is required." *Honor v. Booz–Allen & Hamilton, Inc.,* 383 F.3d 180, 188 (4th Cir.2004). An adverse employment action is a discriminatory act that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Id.* (internal quotation marks omitted). *See also Boone v. Goldin,* 178 F.3d 253, 255–56 (4th Cir.1999). Plaintiff Autrey alleges that she was removed from the position of sanitation worker and that she received notice of a shift change which was never imposed. Plaintiff Morris's only allegation is that he received two counseling memorandum, at least one of which was rescinded. Maryland personnel law specifically provides that a counseling memorandum is "instructional communication and is not a disciplinary action." Md. Code Ann., State Pers. & Pens. § 11-107(a) (Michie 2009). Plaintiffs are unable to assert that a counseling memorandum had any effect on the terms, conditions or benefits of Morris' job.

A shift change that never took place and counseling memoranda are not adverse employment actions. Moreover, the shift change and at least one of the counseling memoranda alleged by Plaintiffs were merely supervisory *recommendations* that were either never taken or that were reversed or rescinded. These reversed or rescinded actions cannot form the basis for vicarious liability under the employment discrimination laws, since they never affected a term, condition, or benefit of either Plaintiffs' employment. *Spriggs v. Pub. Serv. Comm'n of Maryland*, 197 F. Supp. 2d 388, 391-94 (D. Md. 2002), *See also Dennis v. County of Fairfax,* 55 F.3d 151, 156 (4th Cir.1995); *cf. Howze v. Virginia Polytechnic &*

*State Univ.*, 901 F.Supp. 1091, 1096 (W.D.Va.1995) (finding decision not to promote, which was reversed on administrative appeal, did not constitute an adverse employment action).

With regard to the sanitation worker assignment, the mere fact that a new job assignment is less appealing to the employee does not constitute adverse employment action. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir.2004). "There must be some significant detrimental effect and 'absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir.2007) (citing *Boone v. Goldin*, 178 F.3d 253, 256–57 (4th Cir.1999)).

That leaves only the claim Plaintiff Autrey's claim that she was terminated on the basis of her interracial relationship.  For the reasons stated above, Plaintiff Autrey cannot rely upon that allegation because she did not file an administrative charge alleging discriminatory discharge.  Moreover, even if the court had jurisdiction to consider the alleged termination in support of Autrey's disparate treatment claim, her claim would fail nonetheless.  Autrey has not alleged, nor is she able to allege, the requisite third element of a disparate treatment claim:  that others similarly situated, who were not in the protected class, received more favorable treatment.  Autrey acknowledges that she went out on FMLA leave in March of 2012, and that she did not return to work. (Compl. ¶¶ 82, 88.)  Maryland personnel law provides that an employee who is absent without leave, and does not provide notice of the intention to return to work is deemed to have resigned without notice.  COMAR

17.04.04.03D.  Plaintiff Autrey has not alleged that any other employee outside of the protected class who exhaust the 12 weeks of leave to which he or she was entitled under the FMLA, and who did not return to work after the expiration of that leave, was not subject to removal pursuant to COMAR  17.04.04.03D.

In sum, Plaintiffs fail to allege facts to establish a claim of discrimination in the form of disparate treatment.

III.    **PLAINTIFFS' CLAIM OF HOSTILE WORK ENVIRONMENT BASED ON RACE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE THE CONDUCT OF WHICH THEY COMPLAIN WAS NOT SEVERE OR PERVASIVE, AND BECAUSE THERE ARE NO FACTS ALLEGED TO SUPPORT A FINDING THAT THE CONDUCT WAS BASED UPON THE FACT THEY WERE IN AN INTERRACIAL RELATIONSHIP.**

Count II of the Complaint must be dismissed because it fails to state a claim.  To state a claim of hostile work environment based on race, Plaintiffs must allege facts to establish that they was subjected to: (1) unwelcome harassment; (2) based on race; [4] (3) "sufficiently severe or pervasive to alter the conditions of [their] employment"; and (4) imputable to the employer.  *See Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009)(internal quotation marks and citation omitted);  *Wang v. Metropolitan Life Insurance Co.,* 344 F. Supp. 2d 853, 862 (4th Cir. 2004).  In determining whether a hostile work environment exists, courts view the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

---

[4]  Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment."  *National R.R. Passenger Corp. v Morgan,* 536 U.S. 101, 116 n. 10, 122 S. Ct. 2061 (2002).

and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S. Ct. 367 (1993).  A plaintiff must show both that he or she subjectively perceived the workplace environment as hostile and that it would be objectively perceived by a reasonable person as hostile or abusive. *Id.* at 21-22, 114 S. Ct. 367.

### A.  Plaintiffs fail to describe conduct which is severe or pervasive.

Plaintiffs' claim fails to meet the severe or pervasive prong of a prima facie case.  To establish the third element of a hostile work environment claim, a plaintiff must show that the work environment was "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation omitted); *see also Ocheltree v. Scollon Prod.,* 335 F.3d 325, 333 (4th Cir. 2003).  The plaintiffs must show that they subjectively felt that the work environment was hostile or abusive, and that the work environment was objectively hostile or abusive to a reasonable person.  *Harris*, 510 U.S. at 22.  To determine the severity of a hostile work environment, courts look at the totality of the circumstances, which include: (1) the "frequency of the discriminatory conduct"; (2) "its severity"; (3) "whether it is physically threatening or humiliating, or a mere offensive utterance"; and (4) "whether it unreasonably interferes with an employee's work performance."  *Id.* at 23.

The United States Court of Appeals for the Fourth Circuit sets a "high bar" that must be cleared in order to establish the severe and pervasive element.  *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).  Intermittent acts of harassment are

insufficient to establish that a hostile work environment is severe or pervasive. *Greene v. A. Duie Pyle, Inc.*, 371 F. Supp. 2d 759, 762-63 (D. Md. 2005) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).  Indeed, Title VII does not mandate civility in the workplace. *Id.*  Rather, "courts usually only allow hostile work environment claims to proceed where the discriminatory abuse is near constant, oftentimes of a violent or threatening nature, or has impacted the employee's work performance."  *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 777 (D. Md. 2010).

The facts as alleged by Plaintiffs in their Complaint do not reach the "high bar" contemplated by the Fourth Circuit.  *Sunbelt Rentals, Inc.*, 521 F.3d at 315.  Rather, what Plaintiffs describe is a series of sporadic and isolated events which occurred over an extended period.  Most of the incidents described are not identified by date or number of occurrences.  Almost none of the allegations supporting the hostile work environment claim involve Plaintiff Morris.   In fact, the Complaint expressly limits the hostile work environment claim to Plaintiff Autrey.  (Complaint, ¶ 9 "Beginning in September 2011, Ms. Autrey was subjected to severe harassment and discrimination because of her interracial relationship with Cpl. Morris.)  By contrast, the Complaint contains no parallel assertion that Morris was subjected to a hostile work environment.   Moreover, none of the specific harassing actions alleged in the Complaint were directed to Plaintiff Morris; they all involve Plaintiff Autrey alone (Compl. ¶¶10, 34, 46-54, 61-74.)  Accordingly, Plaintiff Morris has failed to state a claim of race based hostile work environment.

With regard to Plaintiff Autrey's claim of hostile work environment, it fails when compared to those cases in which the Fourth Circuit has deemed the "high bar" to have been

cleared.  In *Spriggs v. Diamond Auto Glass*, the court found that a hostile work environment had been sufficiently established where an African-American plaintiff alleged exposure on a "continuous daily" basis to racist comments concerning African Americans by his supervisor, including reference to African Americans as "n****r" and "monkey".  242 F.3d 179, 184 (4th Cir. 2001).  Similarly, in *E.E.O.C. v. Central Wholesalers, Inc.,* the Fourth Circuit allowed the African–American plaintiff's hostile work environment claim to proceed where a number of her co-workers used the word "n* * * *r" in her presence on a *daily* basis, and two of her co-workers kept "blue-colored mop-head dolls in their offices ... hanging from nooses which were tied around the dolls' neck[s]." 573 F.3d 167, 175 (4th Cir.2009). In *Amirmokri v. Balt. Gas & Elec. Co.,* the Fourth Circuit found that the alleged harassment was sufficiently severe or pervasive because an Iranian plaintiff was called "names like 'the local terrorist,' a 'camel jockey' and 'the Emir of Waldorf' " on an almost daily basis, he was denied company benefits, and he suffered an ulcer as a result of the stress. 60 F.3d 1126, 1131 (4th Cir.1995). In *Demby v. Preston Trucking Co.,* the Court denied summary judgment where racial epithets were used repeatedly, the plaintiff experienced several incidents of disparate treatment, and his work space was vandalized with a painted swastika and a threatening and offensive phrase. 961 F.Supp. 873, 880 (D.Md.1997).  Finally, in *Collier v. Ram Partners, Inc.,* the court denied summary judgment where plaintiff was subjected to repeated racial epithets and physical threats. 159 F.Supp.2d 889, 890 (D.Md.2001).

By contrast, in this case the Complaint does not allege facts even approaching the level of intensity and frequency as those in the cases cited above.   Unlike the cases referenced above, there are no allegations that anyone used racial epithets, or the type of

historically charged and highly offensive language present in those cases.  Plaintiff Autrey claims that Lt. Long called her relationship with Morris "disgusting" do not support her cause, since she also acknowledges that he immediately followed the remark with the statement "[h]e's old enough to be your dad."  (Compl. ¶ 47, 52.)  The statement was clearly motivated by the age difference between the Plaintiffs, negating any inference that it was related to the interracial nature of the relationship.  (Compl. ¶¶48, 52.)  Plaintiff alleges additional rude and inappropriate comments made to her by Lt. Long, (Compl. ¶¶ 49, 50, 51, 53, 54,) however, those comments, if true, are not enough to have altered the terms of her employment.[5]  Such comments, while deplorable, are instead of the variety contemplated by the Supreme Court when it said held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Moreover, Plaintiffs' failure to identify most of the incidents they complain of by date negates an inference that they were continuous or occurred within a short window of time.  Indeed, Plaintiffs fail to identify a single incident of harassment that occurred after they filed their internal complaints of discrimination in March of 2012.

---

[5] The statements attributed to Lt. Lancaster have no connection to Plaintiffs' interracial relationship at all.  Lt. Lancaster is alleged to have told Autrey that crying on the job was unprofessional, and instructing her to leave work and take a sick day. (Compl. ¶ 63.)  He is also alleged to have told Autrey that he did not believe she was being harassed, and that she could transfer to a different shift. (Compl. ¶ 74.)  Finally, he is alleged to have said that Captain Davis can "do anything she wants to do" and there is "nothing that you can do about it."  (Compl. ¶ 73.)  There statements do not related to Autrey and Morris' relationship, and on their face, are not the types of racially offensive comments that would support a claim of hostile work environment.

16

**B.     Conduct complained of not attributable to fact that Plaintiffs were involved in an interracial relationship.**

Additionally, many of the actions complained of are not acts of harassment, or are attributable to reasons other than the Plaintiffs' race or relationship.  For example, Plaintiffs complain that they were routinely admonished for making personal phone calls and or spending time together on shift.  On their face, these allegations do not constitute harassment.  According to their own allegations, correctional officers were not permitted by Department policy to make or receive personal calls while on shift.  (Compl. ¶15.)  No reasonable person would assert that enforcing a prohibition on personal calls during work time is an act of discrimination.  Nonetheless, based on these factual allegations, Plaintiffs convert what would otherwise be a legitimate exercise in supervision to an act of racial harassment, by claiming that they alone were singled out for enforcement of that policy by Captain Davis.  In the absence of factual allegations from which a trier of fact could link these actions to discriminatory animus, the fact that Plaintiffs are in an interracial relationship is, on its own, simply not enough.  *Cf. Hawkins v. PepsiCo, Inc.*, 203 F. 3d 274, 282 (4th Cir. 2000) ("Law does not blindly ascribe to race all personal conflicts between individuals of different races.  To do so would turn the workplace into a litigious cauldron or racial tension.")  To state a claim, the allegations must consist of more than speculation, circumstantial evidence, and "conclusory" or "general" statements.  General allegations of differential treatment must be substantiated by "accounts of specific dates, times or circumstances."  *Cepada v. Bd. of Educ. of Baltimore Cnty.*, 974 F. Supp. 2d 772, 784 (D. Md. 2013)

Accordingly, Count II of the Complaint fails to state a claim upon which relief can be granted, and should be dismissed.

**IV.    COUNT III (42 U.S.C. § 1981) MUST BE DISMISSED BECAUSE IT IS BARRED BY THE ELEVENTH AMENDMENT, AND BECAUSE 42 U.S.C. § 1983 IS THE EXCLUSIVE FEDERAL REMEDY FOR VIOLATIONS OF RIGHTS GUARANTEED BY 42 U.S. C. § 1981 BY STATE ACTORS.**

Count III of Plaintiffs' Complaint brought pursuant to 42 U.S.C. § 1981 is barred by the Eleventh Amendment. (Complaint ¶¶ 118-134.) "It is clear, of course, that in the absence of consent, a suit in which the State or one of its agencies or departments is named as a defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S. Ct. 900 (1984) (citations omitted). Courts have therefore overwhelmingly held that since the Eleventh Amendment bars suit against the State, plaintiffs may not sue a state, a state agency, or a state official in his official capacity for monetary damages under §1981. *See Khan v. State of Maryland*, 903 F.Supp. 881, 888-89 (D.Md. 1995) (Section 1981 claim against state agency barred by Eleventh Amendment); *Demuren v. Old Dominion University*, 33 F.Supp.2d 469, 474-75 (D. Va. 1999); *Daisernia v. State of New York*, 582 F.Supp. 792 (N.D.N.Y. 1984) (legislative history of Section 1981 does not indicate a congressional intent to abrogate the states' Eleventh Amendment immunity). Thus, Plaintiffs' § 1981 claim against the State, and the Department, a principal department of Maryland State government must be dismissed. [6]

---

[6] Md. Code Ann. Corr. Servs. § 2-101 (Department of Public Safety and Correctional Services is a principal department of Maryland State government.)

## V.   COUNT V SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM OF RETALIATION.

Plaintiffs' retaliation claim under Title VII must be dismissed because it fails to allege facts sufficient to state a claim upon which relief can be granted. Title VII prohibits discrimination against an employee in retaliation for the employee's opposing or complaining about illegal discrimination:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title, or because he had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

42 U.S.C. § 2000e-3(a)(2000). To maintain a Title VII retaliation claim, Plaintiffs must establish that (1) they engaged in activity protected under the statute; (2) they suffered a "materially adverse" act at the hands of the employer; and (3) the employer's act was causally related to the protected activity.  *Burlington N. & Santa Fe Ry. Co. v.* White, 548 U.S. 53, 61 (2006)*; see also Lettieri v. Equant Inc.*, 478 F. 3d 640, 650 n. 2 (4th Cir. 2007); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir.); *Balazs v. Liebenthal*, 32 F.3d 151, 158-59 (4th Cir. 1994).

### A.  No Adverse Employment Action.

Plaintiffs' Complaint fails to assert facts sufficient to establish the second or third elements of a retaliation claim under Title VII.  Neither Plaintiff has identified an adverse employment action suffered as a result of complaining about discriminatory treatment.  The Supreme Court has defined adverse employment actions as "employer actions that would have been materially adverse to a reasonable employee or job applicant." *Burlington*, 548

U.S. at 57.  For an action to be materially adverse, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.*  This standard is an objective one.  *Id.* at 68-69.

Courts have recognized that "[e]ven with the lower bar [set by the Supreme Court in *Burlington*], none of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee 'AWOL'; or issuing a personal improvement plan, 'an "Attendance Warning," 'a verbal reprimand, 'a formal letter of reprimand,' or 'a proposed termination.' " *Muldrow v. Blank,* No. 13–1200, 2014 WL 938475, at *10 (D.Md. Mar.10, 2014) (quoting *Rock v. McHugh,* 819 F.Supp.2d 456, 470–71 (D.Md.2011).

Plaintiff Morris' retaliation claim is based on the fact that he received two "written counseling" memoranda, one on March 8, 2012, and the other on August 3, 2012. (Compl. ¶¶ 77, 83, 144-46.)   Pursuant to Maryland personnel law, counseling memoranda are deemed "instructional" and are not discipline.  Md. Code Ann., State Pers. & Pens.  11-107(a).   Providing instruction to an employee is not and adverse employment action.[7]

---

[7]  Courts have consistently declined to view instructional communication to an employee, including performance evauations, as materially adverse actions.  See e.g., *Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir.2007) (concluding that "even under the Burlington standard, [plaintiff] is unable to establish a prima facie case of retaliation with respect to ... her May 2002 performance evaluation" as she did not show that it "would have dissuaded a reasonable worker from making or supporting a charge of discrimination") (internal quotations omitted); *Toulan v. DAP Products, Inc.,* No. 05–2254, 2007 WL 172522, at *9 (D.Md. Jan.17, 2007) aff'd sub nom. *Toulan v. DAP, Inc*., 271 F. App'x 312 (4th Cir.2008) ("Even under the relaxed Burlington Northern standard, [plaintiff's] 2005 [poor performance review] does not constitute a materially adverse employment action."); *Simmington v. Gates,*

Moreover, at least one, if not both, of the counseling memoranda were ordered "removed from [Officer Morris'] file." (Compl. ¶ 85.)

Plaintiff Autrey fares no better in her retaliation claim. She, like Morris, is unable to establish an adverse action. Her claim of retaliation rests on her allegation that after she filed a complaint of discrimination, she was informed that her shift would be changed. She further alleges that the shift change that never took place because it was rescinded before it took effect. (Compl. ¶ ¶ 79, 80.) This is not a materially adverse action. Plaintiff Autrey also claims she was terminated in retaliation for complaining about discrimination. She also alleges, however, that she went out on FMLA leave in May of 2012, and did not return to work because "she feared that if she returned to work she would again be subjected to severe harassment, discrimination and retaliation." (Comp. ¶¶ 82, 88.) By her own admission, the reason her employment was severed was because she did not return to work after the expiration of her 12 weeks of FMLA leave. It is not an adverse employment action for an employer to cease paying an employee who has abandoned her position.

Because Plaintiffs' Complaint is devoid of even a single allegation of harm or injury they suffered as a result of the complaints of discrimination they made, they have "failed to plead facts sufficient to establish that the complained of conduct 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination'." *Lindsey-Grobes v. United Airlines, Inc.,* No. GJH-14-00857, 2014 WL 5298030, at *11 (D. Md. Oct. 14, 2014) citing *Burlington*, 548 U.S. at 68.

---

No. 08–3169, 2010 WL 1346462, at * 13 (D.Md. Mar.30, 2010) ("Defendant's actions of giving Plaintiff a letter of expectation and an "Unacceptable" rating were not materially adverse actions.").

### B.  No Causal Connection to Protected Activity

Even if the actions complained of did rise to the level of materially adverse employment actions, Plaintiffs are unable to establish the third element of a retaliation claim. This requires that they demonstrate causation, which they are unable to do under the strict but-for causation standard recently articulated for retaliation claims by the Supreme Court. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, ___ U.S.__, 133 S. Ct. 2517, 2533 (2013). Under this standard, "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in §2000e-2(m) . . . which requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

Plaintiff's claim of retaliation fails because the actions they complained of were not connected, either temporally or otherwise, to their complaints of discrimination.   For example, Morris' second counseling came on August 3, 2012, some five months after Morris's protected activity. (Compl. ¶ 139.)  Autrey's alleged "termination" took place in September of 2012, some seven months after she engaged in the protected activity.  (Compl. ¶ ¶ 75, 89.)  The time that elapsed from March of 2012, when they engaged in protected activity,  to August and September of 2012, when they claim they were retaliated against, negates any reasonable inference of causation.  *See Clark County School District v. Breeden,* 532 U.S. 268 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that that temporal proximity must be very close.") (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253

(10th Cir. 2001)); *see also Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three month interval insufficient to establish causal connection); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (10th Cir. 1992) (four month interval insufficient). *See also Parrott v. Cheney*, 748 F. Supp. 312 (D.Md. 1989) (interval of less than five months insufficient), *aff'd per curiam*, 914 F.2d 248 (4th Cir. 1990). *Dowe v. Total Action Against Poverty,* 145 F.3d 653, 657 (4th Cir.1998)*Shields v. Federal Exp. Corp.*, 120 Fed. Appx. 956, 963 (4th Cir. 2005).

Furthermore, the August 3, 2013, counseling memoranda was issued by Lieutenant Burress, a supervisor who had no involvement in the harassment Plaintiffs complained of. Because of that, Plaintiffs have failed to allege facts supporting a retaliatory animus on Lt. Burress' part.   Indeed, the Complaint does not allege that Lt. Burress was even *aware* that Plaintiffs had engaged in protected activity.   Likewise, the decision to "terminate" Autrey was not alleged to have been made by any of the individuals Plaintiffs complained about. *See Moore v. Reese*, 817 F. Supp. 1290, 1298 (D. Md. 1993) ("Proof that the decision-maker was unaware of the protected activity defeats liability because it makes the establishment of a causal connection impossible."). *See also McGean v. American Red Cross*, 203 F.3d 52, 1999 WL 1021919, Slip Op. at 1 (D.C. Cir. 1999) (unpublished) (where there was no evidence that employer knew of the assistance that employee had allegedly rendered to a co-worker in a Title VII claim, employee could not establish prima facie case of retaliation); *Tinsley v. First Union National Bank*, 155 F.3d 435, 443-445 (4th Cir. 1998) (employee could not establish prima facie case of retaliation, even where she filed a claim of

discrimination and was terminated, because there was no evidence that the supervisor who fired her knew that the employee had filed a claim of discrimination some 14 years earlier).

Likewise, the "termination" of Plaintiff Autrey, after she by her own admission failed to return to work for weeks after the expiration of her 12 weeks of FMLA, cannot be deemed to have occurred "but for" the retaliatory actions of her employer. *Nassar*, 133 S. Ct. 2533. It was her intervening actions, specifically, not returning to work after her leave expired, that resulted in her separation. Indeed, by governing personnel law, Autrey was deemed to have resigned her position. COMAR 17.04.04.03D. The facts alleged do not meet the "but for" causation standard necessary to state a retaliation claim under Title VII. *Id.*

## CONCLUSION

This Court should dismiss the Complaint for failure to state a claim upon which relief may be granted.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland


_____/s/_____
LISA O. ARNQUIST, Bar No. 25338
Assistant Attorney General
Office of the Attorney General
115 Sudbrook Lane, Suite A
Pikesville, Maryland 21208
(410) 585-3079
(410) 764-5366 (facsimile)

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this _____ day of March, 2015, a copy of the foregoing motion and memorandum in support thereof was delivered by electronic means (the Court's CM/ECF) to Jay P. Holland and Joseph M. Creed, JOSEPH, GREENWALD & LAAKE, P.A., 6404 Ivy Lane, Suite 400, Greenbelt, Maryland, 20770.


_____/s/_____
LISA O. ARNQUIST