IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KRISTLE AUTREY, et al.,                    :

    Plaintiffs,                            :

v.                                         :      Civil Action No. GLR-14-3064

STATE OF MARYLAND, et al.,                 :

    Defendants.                            :

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendants', State of Maryland and Maryland Department of Public Safety and Correctional Services, Motion to Dismiss Amended Complaint. (ECF No. 17). The Motion is ripe for disposition. The Court, having reviewed the Motion and supporting documents, finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, the Motion to Dismiss will be granted in part and denied in part.

## I.    BACKGROUND[1]

Plaintiff Kristle Autrey, a white female, was employed as a correctional officer by Defendants at the Brockbridge Correctional Facility in Jessup, Maryland. In May 2011, Autrey began dating another correctional officer at the facility, Plaintiff Adrean Morris, a black male. In September 2011, a co-

---

[1] Unless otherwise noted, the following facts are alleged in the Amended Complaint (ECF No. 14).

worker learned of Plaintiffs' relationship and soon thereafter their supervisors became aware of the relationship.

After learning of Plaintiffs' relationship, Autrey's supervisor, Captain Francine Davis, removed Autrey from a recently assigned position as a sanitation officer.

Plaintiffs' supervisors began to strictly enforce the policy manual solely against Plaintiffs. For instance, the policy prohibiting officers from making or receiving personal telephones was only enforced as to Plaintiffs, while other correctional officers were permitted to violate the policy. When Plaintiffs were seen on a telephone call, personal or work-related, their supervisor would publicly reprimand them. Plaintiffs were the only officers required to inform their supervisor when they went on a break. Plaintiffs were the only officers prohibited from going to another officer's post during their shift to eat lunch, in accordance with the policy manual.

On a near daily basis between September 2011 and May 2012, other officers failed to relieve Plaintiffs for their lunch break in a timely manner. Between September 2011 and March 2012, Plaintiffs' supervisors made complaints about Plaintiffs during "roll call" in front of other officers. In January 2012, Lieutenant Donald Long stated the following to Autrey about her relationship with Morris:

> I hope you're on birth control because you know if your white ass gets pregnant by him he's just going to leave you and have nothing to do with the kid. That's what black men do. . . . Why are you with him? You have such nice hair and his hair is so nappy. . . . It's disgusting that you two are together. He's old enough to be your dad. . . . You know no white men will ever sleep with you now that you've been with that black man. . . . You know your baby daddy will take you children away once he finds out a black man is raising his kids.

(Am. Compl. ¶ 63, ECF No. 14).  On multiple occasions, Long also made sexually-explicit statements within earshot of Plaintiffs when they submitted leave requests.

In February 2012, Davis told Autrey that it "sickened" her to see Autrey with Morris.  In March 2012, Autrey met with Davis to discuss Plaintiffs' supervisors' ongoing treatment of Plaintiffs.  Davis began yelling at Autrey and told her to "shut up" and "get your white ass out of my office."  Later that day, Davis grabbed Autrey by the arm and forced Autrey into a women's bathroom, shut the door, and locked it.  While blocking the exit, Davis stated she was only treating Autrey in such a way because she was "trying to show [Autrey] how the real world works when dealing with a black man."  Davis further stated she would not tolerate Plaintiffs' relationship.  The next day, Autrey requested a referral to the employee assistance program from Lieutenant Laster to make a complaint regarding Davis's

behavior.   Laster stated Davis "could do whatever it is she wants to do" and "there's nothing [Autrey] can do about it."

Autrey and Morris filed internal complaints of discrimination on March 5 and March 8, 2012, respectively.   On March 8, 2012, Davis issued Morris a "written counseling form." On March 9, 2012, Davis gave Autrey a shift change notice. Davis was aware that Autrey could not work a shift other than the 10:00 p.m. to 6:00 a.m. shift because of her child-care responsibilities.   On March 19, 2012, the shift change notice was rescinded.   In May 2012, Autrey took leave pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), as amended, 29 U.S.C. § 2601 (2012), due to physical, mental, and emotional stress.

On July 19, 2012, Autrey filed a charge with the Maryland Commission on Civil Rights ("MCCR").   On July 26, 2012, Morris filed a charge with the MCCR.   On August 3, 2012, Morris was issued another written counseling form.   In September 2012, Autrey was terminated from her employment.   On May 31, 2013, Autrey filed an amended and supplemental charge of discrimination regarding her termination.   On July 7, 2014, Morris received a right to sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC").   On September 24, 2014, Autrey received a right to sue letter from the EEOC.   On September 29, 2014, Plaintiffs filed a Complaint alleging

4

employment discrimination in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e

et seq. (2012).   (ECF No. 1).   On April 29, 2015, Plaintiffs

filed an Amended Complaint.   (ECF No. 14).   On June 12, 2015,

Defendants filed a Motion to Dismiss.[2]   (ECF No. 17).   On July

24, 2015, Plaintiffs filed an Opposition to the Motion.   (ECF

No. 22).   On August 5, 2015, Defendants filed a Reply to the

Opposition.   (ECF No. 23).

## II.   DISCUSSION

### A. Standard of Review

A complaint fails to state a claim if it does not contain

"a short and plain statement of the claim showing that the

pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does

not state "a plausible claim for relief," Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007)).   "Threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do

not suffice."   Id. (citing Twombly, 550 U.S. at 555).

Though the plaintiff is not required to forecast evidence

to prove the elements of the claim, the complaint must allege

sufficient facts to establish each element.   Goss v. Bank of

---

[2]   Defendants filed a Motion to Dismiss the original Complaint on March 20, 2015. (ECF No. 9). Because the March 20, 2015 Motion is nearly identical to the June 12, 2015 Motion and addresses the original Complaint, the Court will deny the March 20, 2015 Motion as moot.

5

Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters</u>

<u>v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)) (internal

quotation marks omitted), <u>aff'd sub nom.</u>, <u>Goss v. Bank of Am.,</u>

<u>NA</u>, 546 F.App'x 165 (4th Cir. 2013).  In considering a Rule

12(b)(6) motion, the court must construe the complaint in the

light most favorable to the plaintiff, read the complaint as a

whole, and take the facts asserted therein as true.  <u>See</u>

<u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 783

(4th Cir. 1999) (citing <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d

1130, 1134 (4th Cir. 1993)).

**B. <u>Analysis</u>**

### 1. Disparate Treatment

The Court will deny the Motion to Dismiss regarding

Plaintiffs disparate treatment claims.

Title VII of the Civil Rights Act of 1964 provides that

"[i]t shall be an unlawful employment practice for an employer .

. . to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or

national origin."  42 U.S.C. § 2000e-2(a)(1) (2012).

To survive a motion to dismiss a claim for disparate

treatment, Plaintiffs must allege that they were treated less

favorably "because of" their interracial relationship.  <u>See</u> <u>id.</u>;

<u>Holcomb v. Iona Coll.</u>, 521 F.3d 130, 139 (2d Cir. 2008)

("[W]here an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's <u>own</u> race."); <u>Collin v. Rectors & Visitors of Univ. of Va.</u>, 163 F.3d 598, 598 (4th Cir. 1998) (per curiam) ("[I]t is generally accepted that the spouses of members of protected parties may be able to make out a prima facie case of discriminatory discharge."); <u>see also</u> <u>Murrell v. Ocean Mecca Motel, Inc.</u>, 262 F.3d 253, 258 (4th Cir. 2001) ("It is well-settled that a claim of discrimination based on an interracial relationship or association is cognizable under [42 U.S.C. §] 1981." (quoting <u>Rosenblatt v. Bivona & Cohen, P.C.</u>, 946 F.Supp. 298, 300 (S.D.N.Y. 1996))).

Plaintiffs must allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment of similarly situated employees outside the protected class."[3]  <u>Hawkins v. Leggett</u>, 955 F.Supp.2d 474, 491 (D.Md. 2013).  "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'"  <u>Holland v. Wash. Homes, Inc.</u>, 487 F.3d 208, 219

---

[3] To survive a motion to dismiss, however, a plaintiff need not establish a prima facie case. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510-11 (2002) (concluding that "the prima facie case . . . is an evidentiary standard, not a pleading requirement").  Instead, a plaintiff must plead facts sufficient to state each element of the asserted claim. <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003).

(4th Cir. 2007) (quoting James v. Booz-Allen & Hamilton, Inc.,
368 F.3d 371, 375 (4th Cir. 2004)).  "Although conduct 'short of
ultimate employment decisions can constitute adverse employment
action,' there still must be a 'tangible effect on the terms and
conditions of employment.'"  Geist v. Gill/Kardash P'ship, 671
F.Supp.2d 729, 737 n.6 (D.Md. 2009) (quoting James, 368 F.3d at
371, 377).   A less appealing job reassignment does not
constitute adverse employment action.  James, 368 F.3d at 376
(citing Von Gunten v. Maryland, 243 F.3d 858, 868 (4th Cir.
2001)).

> A "reassignment can only form the basis of a
> valid Title VII claim if the plaintiff can
> show that the reassignment had some
> significant detrimental effect."  "[A]bsent
> any decrease in compensation, job title,
> level of responsibility, or opportunity for
> promotion, reassignment to a new position
> commensurate with one's salary level does
> not constitute an adverse employment action
> even if the new job does cause some modest
> stress not present in the old position."

Id. (quoting Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999).

     Autrey alleges she was removed from her permanent position
as a sanitation officer.  Autrey, however, fails to allege any
significant detrimental effect or decrease in compensation, job
title, level of responsibility, or opportunity for promotion.
The Court, therefore, finds Autrey's job reassignment cannot
form the basis of her disparate treatment claim.

Additionally, Morris alleges he was issued two written counseling forms. "Issuing a counseling memorandum is an instructional communication and is not a disciplinary action." Md.Code Ann., State Pers. & Pens. § 11-107(a)(1) (West 2015). The counseling forms are similar to poor performance evaluations. See Thorn v. Sebelius, 766 F.Supp.2d 585, 598 (D.Md. 2011) aff'd, 465 F.App'x 274 (4th Cir. 2012). "[A] poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.'" James, 368 F.3d at 377 (quoting Spears v. Mo. Dep't of Corr. & Human Res., 210 F.3d 850, 854 (8th Cir. 2000)). Morris has not alleged the counseling forms altered the terms or conditions of his employment in any way. The Court, therefore, finds the counseling forms cannot form the basis of Morris's disparate treatment claim.

Plaintiffs also allege a claim for disparate discipline, which is a species of disparate treatment. In order to plead a prima facie case of disparate discipline under Title VII, Plaintiffs must allege: (1) they are members of a protected class; (2) the prohibited conduct in which they engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) the disciplinary measures enforced against them were more severe than those enforced against other

employees.  Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993).

Here, Plaintiffs allege they violated Defendants' policies of making and receiving personal telephone calls and going to another officer's post during his or her shift to eat lunch. Plaintiffs also allege officers who were not in interracial relationships violated the policies.  Lastly, Plaintiffs allege they were the only officers publicly reprimanded and made to adhere to the policies.  The Court, therefore, finds Plaintiffs have sufficiently plead a claim for disparate discipline and will deny the Motion to Dismiss as to this claim.

**2. Hostile Work Environment**

The Court will deny the Motion to Dismiss as to Plaintiffs' hostile work environment claims.

To state a claim for a hostile work environment, a plaintiff must plead that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's [interracial relationship]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (quoting Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011)).  Determining whether the environment is objectively hostile or abusive requires the Court to look at all

10

the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."   Id. at 277 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

"'[S]imple teasing,' off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"   Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 82 (1998)).

An isolated incident can be extremely serious if it amounts "to discriminatory changes in the terms and conditions of employment."   Id.   In measuring the severity of harassing conduct, the status of the harasser as a supervisor may be significant because "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character."   Boyer-Liberto, 786 F.3d at 278 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763 (1998)).   Also, the harasser's status as a supervisor may cause the employer to be held strictly liable for the harasser's behavior.   Id.   "The status of the harasser also is relevant to element four of a

hostile work environment claim, which necessitates proof that the harassment is imputable to the employer." Id.

Plaintiffs allege they were harassed based on their interracial relationship and their supervisors, Davis and Long, made comments to Autrey, stating their relationship was disgusting and sickening.  Given the status of Plaintiffs' harassers as supervisors, as well as the frequency and nature of the harassment, the Court finds Plaintiffs have sufficiently alleged a hostile work environment based on their interracial relationship at this stage of the litigation.  Accordingly, the Motion to Dismiss is denied as to Plaintiffs' hostile work environment claim.

### 3. Retaliation

The Court will deny the Motion to Dismiss as to Autrey's retaliation claim and grant the Motion as to Morris's claim.

To state a Title VII claim for retaliation, Plaintiffs must allege that: "(1) [they] engaged in protected activity; (2) an adverse employment action was taken against [them]; and (3) there was a causal link between the protected activity and the adverse action." Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006).  The plain language of Title VII limits "protected activities" to a distinct few activities, including opposing an unlawful employment practice. See 42 U.S.C. § 2000e-3(a).

Additionally, a plaintiff must plead that his or her protected activity constituted the "but-for" cause of the adverse employment action by the employer. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2534 (2013). Little is required to plead causation. See Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1229 (4th Cir. 1998). Ordinarily, temporal proximity between the protected activity and the adverse action is sufficient to suggest causality. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 501 (4th Cir. 2005).

Autrey alleges she filed an internal complaint regarding the alleged discrimination on March 5, 2012. She also alleges that, on March 9, 2012, Davis gave her a shift change notice, but the notice was rescinded before the shift change went into effect. Because the notice did not tangibly change the terms and conditions of Autrey's employment, the Court finds the notice cannot form the basis of a retaliation claim.[4]

Autrey also alleges she filed a charge with the MCCR on July 19, 2012 and was terminated while on FMLA leave in

---

[4] Though Plaintiffs argue increased scrutiny and oversight can form the basis of a retaliation claim, Plaintiffs did not allege any scrutiny or oversight exceeding that which they already experienced when their supervisors first became aware of their relationship.

September 2012.[5] Defendants argue Autrey was terminated because she remained on FMLA leave for more than twelve weeks. This contention, however, is not apparent on the face of the Amended Complaint. While the FMLA guarantees eligible employees twelve weeks of leave in a one-year period, some employers allow more than the twelve-week minimum. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 87 (2002) (citing U.S. Dept. of Labor, D. Cantor et al., Balancing the Needs of Families and Employers: Family and Medical Leave Surveys 5-10, 5-12 (2001)). The Amended Complaint does not allege, nor do Defendants state, the amount of leave Defendants allow their employees. Given the temporal proximity of Autrey's MCCR charge and her termination, the Court finds Autrey has sufficiently pled a retaliatory termination claim and will deny the Motion to Dismiss as to her claim.

Morris alleges he filed an internal complaint regarding the alleged discrimination on March 8, 2012. On March 8, 2012, Davis issued Morris a written counseling form. On July 26, 2012, Morris filed a charge with the MCCR, and on August 3,

---

[5] Defendants argue Autrey's retaliation claim regarding her termination must be dismissed for failure to exhaust administrative remedies. Autrey alleges she filed an amended and supplemental charge of discrimination regarding her termination with the EEOC on May 31, 2013. Assuming the well-pleaded allegations in the Amended Complaint are true, the Court finds Autrey has exhausted her administrative remedies regarding her retaliatory termination claim at this stage of the litigation.

2012, Morris was issued another written counseling form.  As previously stated, the counseling forms are not actionable adverse employment actions.  The Court, therefore, finds Morris has failed to allege a claim for retaliation and will grant the Motion to Dismiss as to his claim.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 17) is GRANTED in part and DENIED in part.  Count III of the Amended Complaint (ECF No. 14) is DISMISSED as to Morris. A separate Order follows.

Entered this 29th day of January, 2016

/s/

_____
George L. Russell, III
United States District Judge